1

2

3

4

5

6

7

**FILED & ENTERED**

**JAN 11 2021**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gooch      DEPUTY CLERK

8

UNITED STATES BANKRUPTCY COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

RIVERSIDE DIVISION

11

12   In re:

Case No.: 6:17-bk-17472-WJ

13   AGUINA AGUINA,

CHAPTER 7

14                                    Debtor.

**MEMORANDUM OF DECISION**

15                                                    **REGARDING AN OBJECTION TO**
**EXEMPTIONS AND OTHER MATTERS**

16

17                                                    Hearings:
Date:      January 12, 2021

18   Time:      1:30 p.m.
Crtrm.:    304

19

20

21

22

23

24

25

26

27

28

1    Hearings are currently scheduled regarding three matters in this case for January 12, 2021

2    at 1:30 p.m.  However, having reviewed the case, the moving papers, the responses and other

3    relevant pleadings, the Court hereby finds that no oral argument regarding the matters is necessary

4    and, pursuant to Rule 9013-1(j)(3) of the Local Bankruptcy Rules, the Court hereby takes off

5    calendar the hearings and waives appearances.  No hearings shall occur.

6

7    **I.    The Objection To Exemptions**

8    Prior to filing his bankruptcy case, the debtor, Aguina Aguina ("Debtor") was married to

9    Choong-Dae Kang a/k/a Mitsuyo Okamoto, a.k.a. KC Kang ("Kang").  Prior to filing his

10    bankruptcy case, they divorced.  However, the divorce proceeding remains pending in state court

11    and has been continuing for many, many years.  It is acrimonious.

12    After filing his bankruptcy case in 2017, the Debtor filed amended schedules on October 6,

13    2020 which (among other things) included an amended schedule C which asserted a new set of

14    exemptions. See Docket #231.  Thereafter, on November 6, 2020, Kang filed a motion objecting to

15    the amended exemptions entitled "Motion Objecting To Amended Exemptions" [docket #238]

16    ("Exemption Objection") along with supporting documents. See Docket #239 & 240.  The Debtor

17    filed opposition to the Exemption Objection [docket #252] and Kang filed a reply [docket #260].

18    Having reviewed all the pleadings, the Court shall deny the Exemption Objection for three

19    reasons.  First, the Debtor has argued that the Exemption Objection is clearly untimely, and the

20    Court agrees.  As set forth in the opposition of the Debtor, Kang did not file the Exemption

21    Objection by the deadline of November 5, 2020.  Kang filed the Exemption Objection a day late on

22    November 6, 2020 and, therefore, the objection is untimely and must be denied on that basis alone.

23    This Court is bound by the decision of the United States Supreme Court which is directly on point:

24    Taylor v. Freeland & Kronz, 503 U.S. 638, 644; 112 S.Ct. 1644, 1648 (1992).[1]

25    _____

26    [1] Kang's reply brief [docket #260] entirely ignores the discussion by the Debtor in his opposition brief
regarding the Supreme Court decision in Taylor.  Kang's reply brief only mentions the timeliness objection in one
27    sentence and does not attempt to respond to the significant issues raised in the Debtor's opposition regarding Taylor
and the applicable rules.  Simply stated, the reply brief by Kang does not contain any bona fide attempt to refute the
28    timeliness argument raised by the Debtor.

1    Second, Kang asserts that the amended schedules were insufficiently served.  Importantly,

2    Kang does not argue that Kang was not properly served.  Instead, Kang argues that other

3    (unspecified) creditors were improperly served.  As to Kang, because Kang does not argue that

4    Kang was not properly served, there is no prejudice.  As to other creditors, the Court order denying

5    the Exemption Objection will provide that the ruling is binding on Kang but not on any other

6    creditors who were not properly served with amended schedules (if any).

7    Finally, the Court denies the Exemption Objection on the merits based (again) on a decision

8    of the United States Supreme Court.  Kang argues that the Debtor cannot switch his exemptions

9    later in a bankruptcy case based on equitable grounds (i.e. estoppel).  However, this argument fails

10    for three reasons.  First, the trustee has not raised it and (in the first instance) the trustee would be

11    prejudiced by the hypothetical turnover request argued by Kang.

12    Second, even if the bankruptcy estate is prejudiced by the switch in exemptions, the

13    prejudice is no different than the normal prejudice that exists in every bankruptcy case and with

14    every exemption.  **Every exemption prejudices creditors**.  An exemption, by its very nature,

15    allows a debtor to keep an asset (in whole or in part) to the detriment of creditors.  It is an inherent

16    feature of all exemptions.  The entire point of an exemption is to deprive creditors of an asset from

17    which they can be satisfied.  An exemption is designed to be prejudicial against creditors.  Its very

18    existence is prejudicial to creditors.

19    So Kang's prejudice argument lacks weight.  If an exemption is otherwise valid, the fact

20    that it may result in loss to the estate is not additional prejudice.  Rather, it is the normal prejudice

21    that is a common (and accepted) feature of all valid exemptions asserted in bankruptcy cases.

22    Third, on the merits, Kang's argument cannot be reconciled with the decision of the United

23    States Supreme Court in Law v. Siegel, 571 U.S. 415 (2014).  Prior to that case, some bankruptcy

24    courts had ruled that a debtor cannot exempt an asset which the debtor conceals.  If a debtor filed a

25    bankruptcy case and concealed an asset, some bankruptcy courts disallowed any exemption later

26    asserted by a debtor if the trustee later found the hidden asset.  Some courts held that they had

27    equitable power to disallow the exemption asserted later with respect to concealed assets.

28

1    However, the Supreme Court specifically rejected this rule of law in <u>Law</u> and stated:

2

3          Siegel points out that a handful of courts have claimed authority to disallow
an exemption (or to bar a debtor from amending his schedules to claim an
4    exemption, which is much the same thing) based on the debtor's fraudulent
concealment of the asset alleged to be exempt. <u>See</u>, <u>e.g.</u>, <u>In re Yonikus</u>, 996 F.2d
5    866, 872–873 (C.A.7 1993); <u>In re Doan</u>, 672 F.2d 831, 833 (C.A.11 1982) (per
curiam ); <u>Stewart v. Ganey</u>, 116 F.2d 1010, 1011 (C.A.5 1940).  He suggests that
6    those decisions reflect a general, equitable power in bankruptcy courts to deny
exemptions based on a debtor's bad-faith conduct.  For the reasons we have given,
7    **the Bankruptcy Code admits no such power**.  It is of course true that when a
debtor claims a state-created exemption, the exemption's scope is determined by
8    state law, which may provide that certain types of debtor misconduct warrant
denial of the exemption. <u>E.g.</u>, <u>In re Sholdan</u>, 217 F.3d 1006, 1008 (C.A.8 2000);
9    see 4 <u>Collier on Bankruptcy</u> ¶ 522.08[1]–[2], at 522–45 to 522–47.  Some of the
early decisions on which Siegel relies, and which the Fifth Circuit cited in <u>Stewart</u>,
10   are instances in which federal courts applied state law to disallow state-created
exemptions. <u>See</u> <u>In re Denson</u>, 195 F. 857, 858 (N.D.Ala.1912); <u>Cowan v.</u>
11   <u>Burchfield</u>, 180 F. 614, 619 (N.D.Ala.1910); <u>In re Ansley Bros.</u>, 153 F. 983, 984
(E.D.N.C.1907).  But federal law provides no authority for bankruptcy courts to
12   deny an exemption on a ground not specified in the Code.

13   <u>Law v. Siegel</u>, 571 U.S. at 425 (emphasis added).

14

15

16        As a result, based on <u>Law</u>, it is clear that bankruptcy courts lack equitable power to

17   disallow an exemption asserted by a debtor later in a bankruptcy case on an asset that was

18   originally concealed.  A fortiori, the bankruptcy court lacks power to disallow an exemption

19   asserted by a debtor later in a case in which the asset <u>was always disclosed</u>.

20        In this case, the Debtor disclosed the exempt asset from the beginning of the case but did

21   not originally exempt it.  Later, he decided to exempt it.  Given that the Supreme Court stated in

22   <u>Law</u> that a debtor cannot be denied the right to exempt a concealed asset later in a case then, of

23   course, a debtor cannot be denied the right to exempt a fully disclosed asset later in a case.  This

24   Court is bound by the decision of the Supreme Court in <u>Law</u>.

25

26

27

28

1

## II.    Abandonment of Assets

2        Next, another hearing is currently scheduled in this case for January 12, 2021 at 1:30 p.m.

3    regarding a stipulation by the trustee to abandon property [docket #232] ("Stipulation") and an

4    objection to the Stipulation [docket #235].  The Court has reviewed the Stipulation, objection,

5    reply and related pleadings.  On November 16, 2020, the Court issued a scheduling order which

6    stated (among other things): "No later than December 29, 2020, the trustee shall file a report

7    advising the Court regarding his position regarding the Stipulation and objection as well as the

8    proposed disposition of the disputed assets.  Any party may reply no later than January 5, 2021."

9    Unfortunately, the trustee never responded to the Court order and did not file the required report.

10        Furthermore, in reviewing the matter, there is no pending motion regarding the Stipulation.

11    And while the local rules (L.B.R. 6007-1(a)) do provide a mechanism for a trustee to abandon

12    assets without court approval, that procedure is typically used when no one objects to the proposed

13    abandonment.  When a party does object, L.B.R. 6007-1(e) provides for a hearing but does not

14    require the filing of a motion.  For this reason, the Court asked the trustee to provide a report

15    regarding the position of the trustee prior to the hearing.  But, again, the trustee has not done so.

16        Accordingly, the Court cannot proceed further with the matter without a motion for

17    abandonment and evidence in support of abandonment.  At present, no party (neither the trustee

18    nor the Debtor nor anyone else) has submitted any motion or evidence in support of abandonment.

19    Likewise, no party has provided any declaration in opposition to the abandonment.  Counsel for the

20    objecting parties did submit a declaration in opposition to abandonment and, while that evidence is

21    problematic because attorneys rarely have personal knowledge of relevant facts, it is the only

22    evidence submitted so far.  So, at present, there is no motion in support of abandonment and no

23    evidence in support of abandonment.  On this record, the Court cannot rule.

24        In addition, this bankruptcy case would not be an ideal case with which to proceed without

25    a pending motion.  This bankruptcy case has involved considerable litigation and appeals regarding

26    many matters over many years.  Now, the parties apparently seek a court order approving or

27    disapproving abandonment (in whole or in part).  As a result, it would be improvident for the Court

28    to rule on the matter given the absence of a pending motion or any evidence in support of the relief

1    requested.  Likewise, the trustee did not file a report in support of abandonment as directed by the

2    Court.

3    Therefore, the Court will issue an order simply taking the matter off calendar without

4    prejudice to the filing of future motions addressing any and all abandonment matters.

5

6    **III.    The Discovery Dispute**

7    Finally, a third hearing is currently scheduled in this case for January 12, 2021 at 1:30 p.m.

8    regarding a motion by the Debtor to compel the trustee to produce documents entitled "Notice of

9    Motion for Turnover of Confidential Information to Debtor" [docket #243] ("Discovery Motion").

10    Several years ago, the trustee demanded documents from Kang and agents of Kang.  The trustee

11    obtained Rule 2004 orders compelling production of documents to the trustee by Kang and agents

12    of Kang.  The latter complied and delivered documents to the trustee.

13    In the Discovery Motion, the Debtor wants an order compelling the trustee to provide the

14    Debtor with copies of all the documents produced to the trustee by Kang and agents of Kang.  The

15    trustee does not object to the Discovery Motion, but Kang does.  In reviewing the pleadings, it is

16    clear that the Debtor has filed the Discovery Motion in the wrong court.

17    The Debtor wants documents from the trustee to pursue an action in another court: the

18    family court.  The Debtor and Kang have been litigating in family court for many, many years.

19    The Debtor hopes that he can obtain the documents produced by Kang (and the agents of Kang) to

20    the trustee to help the Debtor fight Kang in state court.  Kang, of course, objects (vehemently) to

21    the Discovery Motion.

22    Upon due consideration, the Court finds that the Discovery Motion has been filed in the

23    wrong court.  The Debtor should proceed in state court.  The Debtor seeks documents in

24    furtherance of the state court action and, therefore, the rules and procedures governing discovery in

25    that non-bankruptcy action control.  Indeed, the Debtor states in his reply brief that the

26    "information sought in this matter is highly relevant and necessary for the Debtor to complete his

27

28

default prove-up in the Family Law matter . . . ."[2]  The Debtor cannot simply file a motion in bankruptcy court to aid in discovery in a non-bankruptcy matter.

In addition, the Discovery Motion and the opposition to the Discovery Motion make numerous arguments regarding why particular documents are relevant or necessary for prosecution of the state court action.  That is a matter for the state court (not the bankruptcy court) to consider and adjudicate.  In other words, the court presiding over the litigation is the one to resolve discovery disputes and arguments over relevance and necessity of documents.  The bankruptcy court has little knowledge about the state court litigation and, therefore, the bankruptcy court would be a very poor substitute for the court actually presiding over the litigation.

The fact that the trustee holds the disputed documents does not change this analysis.  The trustee (like any other third party) is subject to ordinary discovery requests in non-bankruptcy matters.  If the trustee wants to obtain a protective order, the trustee may do so in the relevant state court and, in some circumstances, possibly in bankruptcy court.  However, the trustee has made no such request.  Indeed, the trustee does not even oppose the Discovery Motion.

Finally, the fact that the trustee and Kang entered into a confidentiality stipulation [docket #128] does not alter this result.  The stipulation specifically states as follows (emphasis added):

> "7.    All Confidential Information produced or obtained by counsel in this action shall be used solely for the purpose of the Trustee's internal analysis of the pending bankruptcy matter and under no circumstances shall it be provided to Aguina, the debtor herein, or his counsel **without further court order**.  Further the Confidential Information shall not be disclosed to any third party or the public **without further court order**."

---

[2] See Docket #259, page 2, lines 3-5.  The complete sentence reads as follows: "The information sought in this matter is highly relevant and necessary for the Debtor to complete his default prove-up in the Family Law matter and ultimately for the trustee to complete his administration in this case."  However, as to the latter phrase ("ultimately for the Trustee to complete his administration in this case"), the Discovery Motion is not necessary.  The trustee already has in his possession all the documents sought by the Discovery Motion.  That is the point.  The trustee has the documents that the Debtor wants.  So the Discovery Motion does not aid the trustee in any way in the bankruptcy case.  Rather, the Discovery Motion is designed to aid the Debtor in the family law litigation.

If the trustee needs more documents or information, he can pursue such an investigation himself.  He does not need the debtor to file a discovery motion against the trustee to produce documents which the trustee already has.  Such an action does not help the trustee "complete his administration of this case."

1    This language makes it clear that the alleged confidential information can be made available to the

2    Debtor or other parties if a court orders such disclosure. The stipulation (as it must) is subject to

3    further court order.

4        Therefore, the state court is free to issue an order directing the trustee to produce documents

5    to the Debtor if such a request is otherwise valid. Neither the stipulation nor the bankruptcy court

6    order approving the stipulation provides otherwise. Thus, the parties should return to state court to

7    obtain a resolution of the matters raised in the Discovery Motion.

8        Finally, the Discovery Motion is improper because it seeks an order compelling the trustee

9    to deliver property (documents) to the Debtor. Rule 7001(1) of the Federal Rules of Bankruptcy

10   Procedure requires an adversary proceeding for such actions. Turnover motions by debtors are not

11   permitted under the rule.

12   IT IS SO ORDERED.

13                      ###

Date: January 11, 2021

Wayne Johnson
United States Bankruptcy Judge

- 8 -